FILED

APR 29 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

## FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 10-62549-B-7 |
| Marc Steven Bomarito and Felicia Nicole Bomarito, | DC No. UST-1 DC No. UST-2 |
| Debtors. | |

### MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTIONS FOR EXTENSION OF TIME AND FOR DISMISSAL PURSUANT TO 11 U.S.C. § 707(b)(3)(B)

Robin Tubesing, Esq., appeared on behalf of August B. Landis, Esq., Acting United States Trustee.

Thomas H. Armstrong, Esq., appeared on behalf of the debtors, Marc and Felicia Bomarito.

Under the Bankruptcy Code, any party in interest to a chapter 7 case filed by an individual debtor may bring a motion to dismiss the case upon a showing that the granting of relief, a chapter 7 discharge, would constitute an abuse of the provisions of chapter 7. 11 U.S.C. § 707(b)(1).[1] The Federal Rules of Bankruptcy Procedure require, with one exception not applicable here,[2] that a motion to dismiss for

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] If the United States Trustee decides to move for dismissal based on "presumed abuse" under § 707(b)(2), the United States Trustee must first file a statement of presumed



1    "abuse" must be brought not later than 60 days after the § 341(a) meeting of

2    creditors, unless the court extends the time *for cause*.  In this contested matter, the

3    court is asked to decide whether sufficient "cause" has been shown to warrant that

4    extension of time.

5        Before the court is a motion filed by August B. Landis, Esq., the Acting

6    United States Trustee (the "UST"), to dismiss this bankruptcy case pursuant to

7    § 707(b)(3)(B) (the "Dismissal Motion").  The UST contends that this case is an

8    abuse of chapter 7 based on the totality of the circumstances.  Also before the court

9    is a motion to extend, *for cause*, the time in which the Dismissal Motion and/or an

10   objection to discharge under § 727(a) must be filed (the "Extension Motion").  The

11   debtors, Marc and Felicia Bomarito (the "Debtors") contend that the UST failed to

12   diligently complete his investigation of the case within the allotted 60 days, that

13   there is no cause for extending the 60-day deadline, and that the Dismissal Motion is

14   untimely.  The factors affecting the UST's ability to investigate the circumstances

15   applicable to the Dismissal Motion are equally relevant to the "cause" question

16   raised in the Extension Motion.  The court therefore directed that both matters be

17   briefed and heard together.  For the reasons set forth below, both the Extension

18   Motion and the Dismissal Motion will be denied.

19       This memorandum decision contains the court's findings of fact and

20   conclusions of law required by Federal Rule of Civil Procedure 52(a), made

21   applicable to these contested matters by Federal Rule of Bankruptcy Procedure

22   7052.  The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C.

23   § 1334, 11 U.S.C. § 707, and General Orders 182 and 330 of the U.S. District Court

24   for the Eastern District of California. This is a core proceeding as defined in 28

25   U.S.C. § 157(b)(2)(A).

26   _____

27   abuse within 10 days after the meeting of creditors.  § 704(b)(1).  The motion itself must be
     filed not later than 30 days thereafter.  § 704(b)(2).  "Presumed abuse" is not an issue in this
28   case.

**Background and Findings of Fact.**

The Debtors filed their voluntary petition under chapter 7 on October 29, 2010. Robert H. Hawkins was appointed to serve as the chapter 7 trustee (the "Trustee"). With the petition, the Debtors filed all required schedules and the statement of financial affairs. The Debtors are individuals and their debts appear to be primarily consumer debts. The schedules report assets worth $709,505. Those assets include the Debtors' residence valued at $574,000 and four automobiles valued collectively at $121,655. The schedules list unsecured nonpriority claims against the estate totaling $173,097. The Debtors have no priority claims. Their secured obligations, which consist of two mortgages against the residence and four loans against the automobiles, total $997,089. The Debtors' statement of intention declares that the Debtors intend to retain and reaffirm the debts for their residence and all four of the automobiles.

The Debtor, Marc Bomarito, owns and operates an insurance agency. He maintains an office and employs three people. His monthly income, consisting solely of revenue from the insurance business, is stated on schedule I to average $27,000 per month. The Debtors have a household size of six persons and their income is well above the applicable median income for this state. Their expenses, reported on schedule J, including the business expenses, are more than $29,000 per month. The Debtors' mortgage payments exceed $5,000 per month and their "vehicle expenses" are reported to be $2,700 per month. As "above median income" Debtors, they were required to complete Form 22A, the chapter 7 means test. The means test shows that the Debtors' monthly disposable income, at the commencement of the case, was *negative* $4,269.50.

The first date set for the meeting of creditors under § 341(a) was November 30, 2010. It was continued to, and concluded by the Trustee on, December 10, 2010. Pursuant to Rules 1017(e)(1) and 4004(a), the last day for any party in interest to bring a motion to dismiss for abuse under § 707(b), or an objection to the

3

1   Debtors' discharge, was January 31, 2011.

2       During the meeting of creditors, the Trustee and the Debtors discussed at

3   length the amount of Mr. Bomarito's prepetition insurance commissions.  At the

4   Trustee's request, the Debtors agreed to amend their schedules to correctly report

5   the commissions and to turn over $7,500 which would represent the nonexempt

6   commissions.  The Trustee and the Debtors also discussed the Debtors' residence

7   and their automobiles.  After the parties worked out the insurance commission

8   issues, the Trustee stated, "It [the turnover agreement] also accelerates the closing

9   . . . .  We'll have it wrapped up in a period of six months . . . .  You'll be in good

10  shape after that."[3]  Nothing in the transcript of that meeting, which the Trustee

11  concluded, suggests that the Trustee had not also concluded his investigation of the

12  case.  The UST did not attend the meeting of creditors and did not conduct any

13  subsequent examination of the Debtors.  Neither did the UST file the statement

14  which is required by § 704(b)(1)(A) if the bankruptcy case is presumed to be an

15  abuse under § 707(b)(2).

16      After concluding the meeting of creditors, the Trustee filed a report

17  indicating that assets would be available for distribution and the court issued a

18  notice directing the creditors to file a proof of claim.  Nineteen unsecured claims

19  totaling more than $159,000 were timely filed.

20      On January 14, 2011, the Debtors filed four reaffirmation agreements, one

21  for each of their automobiles (the "Reaffirmation Agreements").[4]  Each of the

22  Reaffirmation Agreements state that the Debtors have a net monthly income after

23

24      [3]Reporter's Transcript, 13:12-17, December 10, 2010.

25      [4]The Debtors have committed to reaffirm the secured obligations for (1) a 2002 GMC
    SLT Pickup (amount reaffirmed - $13,494.29 with a monthly payment of $323.62), (2) a
26  2008 Porsche 911 Carrera (amount reaffirmed  - $66,677.46 with a payment of $1,162.80),
    (3) a 2008 Mercedes Benz ML 350 (amount reaffirmed - $53,716.55 with a monthly
27  payment of $935.38), and (4) a 2009 Volkswagen Jetta (amount reaffirmed - $18,625.40
    with a monthly payment of $348.82).
28

4

payments due on the reaffirmed debts, in the amount of $229.38. All four

Reaffirmation Agreements are with State Farm Federal Credit Union and all were

signed by the Debtors and their attorney. The Reaffirmation Agreements therefore

became effective and binding, without the need for judicial review or approval,

immediately upon filing. *See* §§ 524(k)(3)(J)(ii) & (m)(2). Altogether, the Debtors

have reaffirmed debts for their automobiles totaling $152,513.70 with monthly

payments totaling $2,770.62.

On January 31, 2011, the last day on which any party could file a motion to

dismiss under § 707(b), or an objection to discharge under § 727(a), the UST filed

the Extension Motion. The basis for the UST's request is summarized in the

Extension Motion as follows:

> *The Chapter 7 Trustee and the United States Trustee are still reviewing the Debtors' schedules and amended schedules and other information relevant to the Debtors' case for issues of possible abuse.*
>
> *[A]dditional time is required to conclude the United States Trustee's investigation and to accurately determine* whether a motion to dismiss or a complaint objecting to debtors' discharge is appropriate in this case.
>
> . . .
>
> Cause exists to extend the time to move to dismiss and object to discharge on the grounds that *the Chapter 7 Trustee and the United States Trustee have not concluded the investigation* and entry of a discharge is premature. (Emphasis added.)

The sole evidentiary support for the Extension Motion is a declaration from

the UST's staff attorney which states:

> The Chapter 7 Trustee and the United States Trustee are still reviewing the Debtors' schedules and amended schedules and other information relevant to the Debtors' case for issues of possible abuse.
>
> . . .
>
> Based on information available to date, additional time is required to conclude the Chapter 7 Trustee and the United States Trustee's investigation and to evaluate the debtor's financial documentation.

5

1    The day after the UST filed the Extension Motion, Debtors' counsel, Thomas

2    Armstrong, contacted the UST's office and made arrangements to produce his

3    clients for an examination which was tentatively scheduled to take place on

4    February 17, 2011. The day after that conversation, the UST's staff attorney sent an

5    email cancelling the scheduled examination and requesting instead the production of

6    some "financial records" and "any written explanations [sic] regarding [the

7    Debtors'] financial affairs . . . ." On February 15, the staff attorney contacted Mr.

8    Armstrong and cancelled the informal document production request. She stated that

9    she had completed her "totality of the circumstances" analysis of the case based on

10    the documents already in the record. The Dismissal Motion was filed on March 2.

11    Nobody has filed an objection to the Debtors' discharge or a complaint to determine

12    the dischargeability of a debt.

13    **Issues Presented.**

14    The UST filed a timely motion to extend the time prescribed under both Rule

15    1017(e)(1) and Rule 4004(a). The UST has not filed a complaint objecting to the

16    Debtors' discharge so the extension request under Rule 4004 is moot. The UST

17    contends, based on the totality of the circumstances, that the granting of relief in this

18    case, specifically a chapter 7 discharge, would constitute an abuse of the provisions

19    of chapter 7. Based on the Reaffirmation Agreements, the UST argues that the

20    Debtors may have sufficient disposable income to fund a chapter 13 plan and pay a

21    substantial dividend to their unsecured creditors. With reference to the Debtors'

22    home and four expensive automobiles, the UST also argues that the Debtors live an

23    extravagant lifestyle with unnecessary and unreasonable expenses. The Debtors

24    dispute the abuse issue on the merits. They also contend that the Dismissal Motion

25    is untimely because it was not filed within the 60 days allowed in Rule 1017(e)(1)

26    for bringing such a motion. The Debtors' opposition requires the court to first rule

27    on the issues raised in the Extension Motion.

28    In the Extension Motion, the UST requests additional time to file the

6

1  Dismissal Motion.  The UST argues in his supplemental brief that cause exists to

2  extend the time limit in Rule 1017(e)(1) because the alleged abuse was not apparent

3  until the Debtors filed the Reaffirmation Agreements seventeen days before the

4  deadline.  The UST also contends that more time was required to review current

5  case law regarding the abuse issue.

6  **Analysis and Conclusions of Law.**

7      **Applicable Law.**  The Bankruptcy Code offers three mutually exclusive

8  ways to determine when an individual debtor's case constitutes an abuse of chapter

9  7.  "Abuse" may be presumed based on the means test factors defined in §

10  707(b)(2).  Alternatively, it may be established as a function of either bad faith

11  under § 707(b)(3)(A) and/or the totality of the circumstances under § 707(b)(3)(B).[5]

12  The UST brings the Dismissal Motion under § 707(b)(3)(B)[6]  "[T]he purpose of

13  section 707(b)(3)(B) is to give courts greater discretion to dismiss a case that,

14  although not abusive under section 707(b)(2)'s mechanical means test, is shown to

15  be abusive based on its particular facts and circumstances."  *United States Trustee v.*

16  *Hilmes (In re Hilmes)*, 438 B.R. 897, 907 (Bankr. N.D. Tex. 2010) (citations

17  omitted).

18      Pursuant to Rule 1017(e)(1), a motion to dismiss under § 707(b)(3) must be

19  

20      [5]The UST did not move to dismiss for bad faith under § 707(b)(3)(A).  Neither does

21  the UST contend that the lack of good faith is a circumstance to be considered in support of
either Motion.

22  

23      [6]Section 707(b)(3) states in pertinent part:

24      In considering under paragraph (1) whether the granting of relief would be an
abuse of the provisions of this chapter in a case in which the presumption in

25  subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall
consider–

26      . . .

27      (B) the totality of the circumstances (including whether the debtor seeks to
reject a personal services contract and the financial need for such rejection as sought

28  by the debtor) of the debtor's financial situation demonstrates abuse.

7

filed within 60 days after the § 341(a) meeting of creditors unless the court extends the time for cause.[7]  The term "cause" as it applies here is not defined in the Bankruptcy Code.  The "cause" determination is therefore left to the discretion of the bankruptcy court; it is fact-specific and must be made on a case-by-case basis. *In re Molitor*, 395 B.R. 197, 205 (Bankr. S.D. Ga. 2008) (citations omitted).

Although the UST requests dismissal of the case to prevent abuse, he is really objecting to the Debtors' right to receive chapter 7 relief, in other words a chapter 7 discharge, on the grounds, *inter alia*, that the Debtors should be in chapter 13. Indeed, § 707(b)(1) and Rule 1017(e) both give the court the authority to convert an abusive chapter 7 case to chapter 13, in lieu of dismissal, if the debtor consents. The "for cause" term in Rule 1017(e)(1) must be read in conjunction with the same "for cause" provision in Rule 4004(a) & (b) (which limits the time to object to a debtor's discharge), and in Rule 4007(c) (which limits the time to file a complaint to determine the dischargeability of a debt). Each of those rules require that the subject action be taken within 60 days after the § 341(a) meeting of creditors, unless the court extends the time for cause. Since Rules 1017(e), 4004(a) & (b) and 4007(c) all deal essentially with the right to receive chapter 7 relief, then the standard for application of the time limits in those Rules should be consistent. Identical words used in different parts of the Rules should be given the same meaning. *See Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (citations omitted) (applying the "normal rule of statutory construction" that identical words used in the same body of statutory law are intended to have the same meaning).  Similarly, the

---

[7]Rule 1017(e)(1) provides:

Except as otherwise provided in § 704(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) may be filed *only within 60 days* after the first date set for the meeting of creditors under § 341(a), unless, on request filed before the time has expired, the court *for cause* extends the time for filing the motion to dismiss. . . . (Emphasis added.)

8

1    court may look to cases interpreting the "for cause" exception in one of the Rules

2    for guidance in its application to the other Rules.

3          The moving party has the burden of proof to show cause to extend the time

4    for matters relating to the debtor's discharge. *See In re Stonham*, 317 B.R. 544, 547

5    (Bankr. D.Colo. 2004) (interpreting the "for cause" exception in Rule 4007(c)

6    which limits the time to file a dischargeability complaint). The same standard has

7    been applied to motions for additional time under Rule 1017(e)(1). *Molitor*, 395

8    B.R. at 205. The movant's burden of proof cannot be "satisfied with only a scintilla

9    of evidence." *Stonham*, 317 B.R. at 547. The movant seeking an extension of time

10   for cause must "establish at least a reasonable degree of due diligence to be

11   accorded the requested extension." *Molitor*, 395 B.R. at 205 (citing *Stonham*, 317

12   B.R. at 547).

13         The power to extend the 60-day deadlines prescribed in the Rules "rests

14   entirely within the discretion of the bankruptcy judge and should not be granted

15   without a showing of good cause, and without proof that the creditor acted diligently

16   to obtain facts within the bar date . . . but was unable to do so." *In re Farhid*, 171

17   B.R. 94, 96, (N.D. Cal. 1994) (citation omitted). The power is to be exercised

18   cautiously and not where lack of diligence by the creditor appears. *Id*. at 97

19   (citations omitted).

20         In early decisions where the courts were asked to interpret the "for cause"

21   term in the Rules, a split developed over the applicable standard, specifically with

22   regard to extensions of time to object to discharge. Some courts ruled that

23   extensions should be granted liberally absent a clear showing of bad faith. *See In re*

24   *Desiderio*, 209 B.R. 342, 345 (Bankr. E.D. Pa. 1997) (citation omitted). Other

25   courts denied the extension request unless the moving party could show that it had

26   promptly investigated the debtor's circumstances. *Id*. Later decisions tend to

27   follow the more restrictive view. "[T]he emerging standard in this area is away

28   from the more liberal standard and towards requiring the creditor to establish at least

9

1   a reasonable degree of due diligence to be accorded an extension." *Id.*

2        In rejecting the liberal standard for granting extensions of time, the *Desiderio*

3   court also looked for support to the Supreme Court's decision in *Taylor v. Freeland*

4   *& Kronz*, 503 U.S. 638 (1992). In *Taylor*, the court strictly construed the 30-day

5   deadline in Rule 4003(b) for filing objections to a debtor's exemptions. 503 U.S. at

6   643-45. "Deadlines may lead to unwelcome results, but they prompt parties to act

7   and they produce finality." *Id.* at 644. "Thus, the *Taylor* holding that any right to

8   an extension must be strictly construed should carry over to analysis of

9   discharge/dischargeability extensions." *Desiderio*, 209 B.R. at 346.

10        The "strict construction" standard is further supported by the fact that Rule

11   9006(b), the general procedural rule for enlarging the time limits under the other

12   Rules, specifically excludes the deadlines in Rules 1017(e), 4004(a) and 4007(c)

13   from its application. Rule 9006(b)(3).[8] As a result of this exclusion, the courts may

14   not consider an untimely motion to enlarge the 60-day deadline in those Rules and

15   may not consider whether the failure to act was the result of excusable neglect.

16   Rule 9006(b)(1); *See also Desiderio*, 209 B.R. at 345.

17        One court, considering the request under Rule 4004(b) for an extension of

18   time to object to the chapter 7 discharge, compiled a list of "cause" factors which

19   the court should consider. *In re Nowinski*, 291 B.R. 302 (Bankr. S.D. N.Y. 2003).

20   The four *Nowinski* factors applicable here are: (1) whether the moving party had

21   sufficient notice of the deadline and information to file an objection, (2) the

22   complexity of the case, (3) whether the moving party has exercised diligence, and

23   (4) whether the debtor has been uncooperative or acted in bad faith. *Id.* at 305-06

24

25       [8]Rule 9006(b)(3) states in pertinent part:

26

27        *Enlargement Governed By Other Rules.* The court may enlarge the time for
taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c),

28   4008(a), 8002, and 9033, only to the extent and under the conditions stated in those
rules. (Emphasis in original.)

(citations omitted).

**The Extension Motion is Not Supported by an Adequate Showing of**

**"Cause."** The Debtors' opposition to both Motions begins with § 704(b)(1)(A)

which charges the UST with the responsibility to investigate, early in the case, all

chapter 7 cases, in which the debtor is an individual, for possible abuse of the

provisions of chapter 7.[9] From that investigation, the UST must determine whether

there is a presumption of abuse, which might warrant dismissal under

§ 707(b)(2). Here, the UST did not pursue an action for presumed abuse but he did

acknowledge, through counsel at oral argument, that the investigation was

conducted within the allotted time and a determination was made to not seek relief

under § 707(b)(2). Based thereon, the Debtors argue that the UST's investigation of

this case was essentially complete within ten days after conclusion of the § 341(a)

creditor meeting.

In response, the UST correctly points out that the time limits which define

the review process for presumed abuse do not apply here because the Dismissal

Motion only seeks relief based on the totality of the circumstances. The UST's

response misses the Debtors' point. Implicit in the "due diligence" inquiry are two

questions which must be addressed: (1) What effort did the UST make to

investigate the applicable circumstances within the 60 days allowed by the Rules,

and (2) Why wasn't the UST able to complete that investigation within the allotted

time? The fact that the UST necessarily completed his "presumption of abuse"

---

[9]Subsection 704(b)(1)(A) provides:

With respect to a debtor who is an individual in a case under this chapter–

(A) the United States trustee (or the bankruptcy administrator, if any) shall review all
materials filed by the debtor and, not later than 10 days after the date of the first
meeting of creditors, file with the court a statement as to whether the debtor's case
would be presumed to be an abuse under section 707(b).

11

1  analysis within ten days after the meeting of creditors is highly relevant to both

2  questions.

3      In support of the Extension Motion, the UST states only that the chapter 7

4  Trustee and the UST "are still reviewing the Debtors' schedules and amended

5  schedules and other information relevant to the Debtors' case for issues of possible

6  abuse."[10]  Addressing first the UST's argument with regard to the chapter 7 Trustee,

7  the statement appears to be completely unfounded.  The Trustee did not join in

8  either of the UST's Motions.  There is no other evidence to suggest that the Trustee

9  has done, or intends to do, any further investigation of this case since he concluded

10  the meeting of creditors.  Indeed, the transcript of that meeting suggests that the

11  Trustee would complete his administration of the case as soon as the Debtors turned

12  over the insurance commissions as agreed in the meeting.  At the Trustee's request,

13  the court issued a notice of assets directing creditors to file proofs of claim.  It

14  makes no sense that the Trustee would still be evaluating the case for possible

15  dismissal after he demanded the turnover of assets for distribution to the creditors.

16      With regard to the UST's investigation, the issue becomes more

17  problematic.  The UST had notice of the applicable deadlines.  This does not appear

18  to be an unusually complex case and there is no evidence to suggest that the Debtors

19  acted in bad faith or were uncooperative with the UST's investigation of the case.

20  The UST did not attend the § 341(a) meeting of creditors or make any effort to

21  conduct a further examination of the Debtors after conclusion of that meeting.  The

22  only action the UST took after conclusion of the § 341(a) meeting was to file the

23  Extension Motion in support of which the UST could only assert that he had not

24  completed the investigation and needed more time.

25      The UST contends that the abuse issue did not surface until the Debtors filed

26  the Reaffirmation Agreements, disclosing that they had sufficient disposable income

27  _____

28      [10]UST's Motion to Enlarge Time.  ¶3

12

to fund a chapter 13 plan. It is true that the Reaffirmation Agreements were not filed until seventeen days before expiration of the 60-day limitation period, but the UST did not instigate any discovery after the Agreements were filed. The Debtors' statement of intention, filed at the beginning of the case, disclosed their intention to retain and pay for the automobiles. The UST could have inquired about the Debtors' intention and the source of income to fund those debts long before the Reaffirmation Agreements were actually filed. The UST could have made that inquiry at the § 341(a) meeting or he could have scheduled a follow-up Rule 2004(a) examination. The Debtors' offer to appear for an examination and to produce additional financial records before the hearing on these Motions was declined by the UST. In the end, all of the documents and facts which the UST relies upon in support of the Dismissal Motion were in the record before the 60-day time limit expired.

The 60-day deadlines in the Rules strike a balance between the competing interest of the debtors who want a fresh start, the creditors who would like to receive payment of their claims, and the U.S. Trustee who is charged with the duty to protect the bankruptcy system from abusive filings.[11] The relatively brief deadlines for objections relating to chapter 7 relief are there to encourage

---

[11]The competing policy considerations are discussed in *Molitor* as follows:

Tension exists between the Debtor's interest in obtaining a prompt "fresh start" and the UST's statutory duties to prevent abusive bankruptcy filings. The Bankruptcy Rules strike a balance between these competing interests by providing the UST 60 days from the first date set for the § 341 meeting of creditors to review Debtor's filings, investigate, and if necessary, file a motion to dismiss. Interim Bankruptcy Rule 1017(e)(1). The UST may obtain additional time with a showing of "cause." Allowing the UST additional time when he has failed to diligently investigate would ignore the mandated deadlines and diminish Debtor's legitimate interest in a prompt and speedy resolution of her bankruptcy case.

*Molitor*, 395 B.R. at 206.

13

expeditious administration of the case. The short deadlines "give debtors some
degree of certainty in the process of obtaining a discharge." *In re Chamness*, 312
B.R. 421, 423 (Bankr. D.Colo. 2004). "A Chapter 7 bankruptcy discharge entitles a
debtor to a 'fresh start,' therefore, the debtor has an interest in the prompt resolution
of all discharge issues." *In re Davis*, 195 B.R. 422, 424 (Bankr. W.D. Mo. 1996)
(citation omitted). The deadlines can only be extended for cause. In this context,
"cause" is not shown when the moving party offers no evidence to show that he or
she has diligently prosecuted an investigation of the underlying issues and offers no
reasonable explanation why that investigation could not be completed within the
time allotted.

**Conclusion.**

Proceedings which have the effect of denying chapter 7 relief to an
individual debtor must be brought within a relatively short period of time, as
provided in the Federal Rules of Bankruptcy Procedure. The courts have discretion
to extend that time, on noticed motion, based on a showing of cause. To establish
"cause," the moving party must (1) make an affirmative showing that he or she has,
with reasonable diligence, attempted to investigate the facts and circumstances, and
(2) offer a reasonable explanation of why that investigation could not be completed
within the allotted time. In this case, neither issue is adequately addressed.

Based on the foregoing, the court finds and concludes that the UST has not
sustained his burden to establish cause for the extension of time under Rule
1017(e)(1). Accordingly, the Extension Motion will be denied. Since the Dismissal
Motion was untimely, the court does not need to rule on its merits. The Dismissal
Motion will be denied as well.

Dated: April ___29___, 2011

W. Richard Lee
United States Bankruptcy Judge

14